UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

TERESA MURPHY aka TERESA LEO,

                          Plaintiff,

        -against-

ROCKLAND COUNTY; WARWICK
POLICE DEPARTMENT; OFFICER
MAZELLA; JUDGE BROWN; ORANGE
COUNTY PROBATION; P.O. SKYLER
KEMP; C.P.S. AGENTS TAMMIE
JOHNSON; CAROL C. PIERCE; ANDREW
R. KASS; OSPRA, JOHN DOES 1-10,

                          Defendants.

1:25-CV-1950 (LLS)

ORDER TO AMEND

LOUIS L. STANTON, United States District Judge:

        Plaintiff Teresa Murphy, also known as Teresa Leo, filed this *pro se* action. In her

amended complaint,[1] she asserts claims of federal constitutional violations under 42 U.S.C.

§ 1983 and claims of conspiracy under 42 U.S.C. § 1985. She also asserts violations of federal

criminal statutes. Plaintiff names as defendants: (1) the County of Rockland; (2) the Town of

Warwick Police Department; (3) "Officer Mazella," who appears, from Plaintiff's original

complaint, to be a Town of Warwick Police Officer; (4) "Judge Brown," who appears to be Judge

Craig Stephen Brown of the County Court, Orange County, who is also an Acting Justice of the

New York Supreme Court, Orange County; (5) the County of Orange's Probation Department;

(6) Orange County Probation Officer Skyler Kemp; (7) Orange County Child Protective Services

("OCCPD") agent Tammie Johnson; (8) OCCPD agent Carol C. Pierce; (9) OCCPD agent

Andrew R. Kass; (10) OCCPD agent "Ospra"; and (11) unidentified defendants "John Does 1-

---

[1] Plaintiff's amended complaint (ECF 10) is the operative pleading for this action.

10." (ECF 10). In addition to damages, Plaintiff seeks: (1) an "[i]njunction to [h]alt prosecution and [r]emove [a]ll [h]olds on [f]ingerprint [r]ecord"; (2) "[r]eunification with [a]ll [c]hildren"; and (3) a "[c]riminal [r]eferral to" the United States Department of Justice ("DOJ") and to the Federal Bureau of Investigation ("FBI"). (*Id*. at 3.) She also seeks: (4) a "[f]ull federal protective injunction against Warwick, Rockland, and Orange County law enforcement"; (5) "[i]mmediate expungement of [her] March 23, 2025 arrest and [the] release of Mr. [Charles Bernard] Starke from unlawful confinement"; (6) an "[e]mergency order halting all further state attempts at harassment, contact, or litigation"; and (7) referral of this matter to federal agencies for investigation and criminal prosecution. (*Id.* at 5.)

Plaintiff has filed additional submissions seeking injunctive and declaratory relief. In an "Emergency Motion to Dismiss Malicious State Charges," Plaintiff asks the Court to; (1) "[i]mmediately dismiss all charges arising from [a] January 13, 2025 incident"; (2) "[e]njoin state actors from continuing unlawful prosecution"; and (3) "[o]rder a federal evidentiary hearing to expose retaliatory conspiracy."[2] (ECF 7, at 2.)

In a submission entitled "Constitutional Challenge and Demand for Declaratory Relief," Plaintiff demands that this Court "declare all proceedings connected to [her] September 10, 2022 arrest[] and July 8, 2023 conviction[] to be unconstitutional and void," and that she receive "full restoration of civil rights, expungement of records, reinstatement of driving privileges, and injunctive relief barring further targeting." (ECF 15, at 2.)

---

[2] This submission was filed before Plaintiff filed her amended complaint and names more defendants than those subsequently named in Plaintiff's amended complaint. (ECF 7 & 10.) Because Plaintiff's amended complaint is the operative pleading, the Court will address only those claims raised against those defendants named in the amended complaint.

In her "Final Affidavit of Harm and Demand for Federal Protection," Plaintiff asks the Court for: (1) an unspecified "federal injunction against Warwick Police and [the] Orange County Sheriff's Department"; (2) "[p]rotection of witnesses[,] including Carrie Ware Samson and [Charles Bernard] Starke"; (3) "[r]estoration of [her] parental rights and family unity"; and (4) the "criminal prosecution of all individuals and departments involved under [the Racketeer Influenced and Corrupt Organizations Act ("RICO")], civil rights, and terrorism statutes." (ECF 13, at 2.)

Plaintiff, in her "Sworn Federal Affidavit: RICO Enterprise, Gang Stalking, and Domestic Terrorism," seeks "emergency intervention and injunctive protection" due to violations of her federal civil rights and due to violations of federal criminal law. (ECF 12, at 2.)

In another "Affidavit of Harm and Demand for Federal Protection," Plaintiff seeks: (1) "[i]mmediate federal review and investigation by the [DOJ]"; (2) "injunctions against continued harassment, intimidation, and unauthorized entry"; (3) "protection of witnesses and allies assisting [Plaintiff]"; (4) "[r]estoration of access to [Plaintiff's] child and the ability to worship freely." (ECF 14, at 2.)

Finally, in an "Emergency Motion for Federal Injunctive Relief, Criminal Referral, and Declaration of Covenant Under God," Plaintiff seeks: (1) "[i]mmediate federal injunction prohibiting continued surveillance or intimidation by local or county law enforcement"; (2) "[r]estoration of custody rights and protection from unlawful family court actions"; (3) "DOJ and FBI investigation into all parties involved under RICO, terrorism, and civil rights statutes"; (4) "[p]rotection of all material witnesses from retaliation or psychological harm"; and (5) "[a]cknowledgment of [Plaintiff's and Charles Bernard Starke's] covenantal union as a protected mission under the First and Fourteenth Amendments." (ECF 16, at 1-2.)

By order granted April 30, 2025, the court granted Plaintiff leave to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. (ECF 11.)

The Court construes the additional submissions discussed above as supplements to Plaintiff's amended complaint, and understands that Plaintiff is seeking relief under 42 U.S.C. §§ 1983 and 1985, as well as under state law, on behalf of herself, Charles Bernard Starke, and Carrie Ware Samson. The Court also understands that Plaintiff may be seeking *habeas corpus* relief on behalf of herself and on behalf of Starke. For the reasons set forth below, the Court grants Plaintiff 60 days' leave to replead her claims in a second amended complaint in which she asserts claims, solely on her own behalf, under Sections 1983 and/or 1985, and, if she wishes, under state law, as specified below; Plaintiff may not replead, in her second amended complaint, any claim dismissed in this order in which the Court has not granted leave to replead.

## STANDARD OF REVIEW

The Court must dismiss an IFP complaint, or any portion of the complaint, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3).

While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted, emphasis in original). But the "special solicitude" in *pro se* cases, *id*. at 475 (citation omitted), has its limits – to state a claim, *pro se* pleadings still must comply with Rule 8 of the Federal Rules of Civil

Procedure, which requires a complaint to make a short and plain statement showing that the pleader is entitled to relief.

The Supreme Court of the United States has held that, under Rule 8, a complaint must include enough facts to state a claim for relief "that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible if the plaintiff pleads enough factual detail to allow the court to draw the inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the complaint, the Court must accept all well-pleaded factual allegations as true. *Id.* But it does not have to accept as true "[t]hreadbare recitals of the elements of a cause of action," which are essentially just legal conclusions. *Id.* (citing *Twombly*, 550 U.S. at 555). After separating legal conclusions from well-pleaded factual allegations, the Court must determine whether those facts make it plausible—not merely possible—that the pleader is entitled to relief. *Id.* at 679.

## BACKGROUND

Plaintiff alleges the following: Plaintiff was unlawfully arrested by unspecified officers at an unspecified location on September 10, 2022, "culminating in a coerced felony [driving-while-intoxicated (DWI)] plea on July 8, 2023," in an unspecified court; she asserts that this conviction is "unconstitutional, void ab initio, and must be vacated in full." (ECF 15, at 1.) On January 13, 2025, she "was forcibly and unlawfully arrested at her home without a warrant, without probable cause, and without a sworn affidavit by any injured party. She was dragged from her bedroom, half-dressed, while suffering a [post-traumatic stress disorder (PTSD)] episode and migraine, in front of her three children." (ECF 10, at 1.) Her January 13, 2025 arrest at her Warwick home was carried out by unidentified members of the Town of Warwick Police Department. (ECF 13, at 1.) Plaintiff "was transported to a hospital where she was forcibly sedated, assaulted, and mocked by security." (ECF 10, at 1.) Her "phone was destroyed," and she lacked shoes,

identification, a jacket, and access to her children, who were apparently removed from her custody.[3] (*Id.* at 1-2.) In February 2025, Town of Warwick police officers continued to attempt to enter Plaintiff's home without a warrant and to surveil Plaintiff's home. On March 22, 2025, Plaintiff was charged with "fabricated" criminal offenses and was issued an appearance "ticket." (*Id.* at 2.) The criminal charges brought against her on March 22, 2025, arising from her January 13, 2025 arrest, "were issued as malicious retaliation during a federal civil rights assertion and home invasion." (ECF 7, at 1.) Plaintiff also states that, "[o]n March 23, 2025, [she] was taken into custody by force in direct retaliation for her protected filings. She was shackled overnight to a metal chair in a basement office, exposed to surveillance and harsh lighting, amounting to psychological torture and constitutional abuse." (ECF 10, at 5.) Plaintiff's arrests have jeopardized her certification as a licensed educator within the State of New York.

## DISCUSSION

### A.    Claims seeking relief under federal criminal statutes

To the extent that Plaintiff seeks the federal criminal prosecution of any of the defendants, or anyone else, the Court must dismiss such claims for relief. Plaintiff cannot initiate a criminal prosecution in this court because "the decision to prosecute is solely within the discretion of the prosecutor." *Leeke v. Timmerman*, 454 U.S. 83, 86-87 (1981). Neither Plaintiff nor the Court can direct prosecutors to initiate a criminal proceeding against anyone because prosecutors possess discretionary authority to bring criminal actions, and they are "immune from control or interference by citizen or court." *Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 87 (2d Cir. 1972). Accordingly, because Plaintiff lacks standing to cause the federal

---

[3] Plaintiff alleges that her "children were taken and placed in the custody of a man with a documented violent and drug-addicted history, while [Plaintiff], a sober, stable, full-time teacher, was denied [her] right to parent and protect them." (ECF 14, at 1.)

criminal prosecution of others, *see Linda R.S. v. Richard D.*, 410 U.S. 614, 618-19 (1973), the

Court dismisses, for lack of subject matter jurisdiction, any claims in which Plaintiff seeks the

federal criminal prosecution of anyone, including the defendants, *see* Fed. R. Civ. P. 12(h)(3);

*Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 62 (2d Cir. 2012) ("If [a] plaintiff[ ] lack[s] Article III

standing, a [federal] court has no subject matter jurisdiction to hear [her] claim." (internal

quotation marks and citation omitted)).

**B.     Claims on behalf of others**

Inasmuch as Plaintiff asserts claims *pro se*, under 42 U.S.C. §§ 1983 and 1985, as well as

under state law, on behalf of Starke and/or Samson, the Court must dismiss those claims. The

statute governing non-*habeas corpus*-associated appearances in federal court, 28 U.S.C. § 1654,

"allow[s] two types of representation: 'that by an attorney admitted to the practice of law by a

governmental regulatory body, and that by a person representing himself [or herself].'" *Lattanzio

v. COMTA*, 481 F.3d 137, 139 (2d Cir. 2007) (quoting *Eagle Assocs. v. Bank of Montreal*, 926

F.2d 1305, 1308 (2d Cir. 1991)). A nonlawyer cannot bring a non-*habeas corpus* suit on behalf of

another person. *See United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 92 (2d Cir.

2008); *Iannaccone v. Law*, 142 F.3d 553, 558 (2d Cir. 1998).

Plaintiff does not allege that she is an attorney. Accordingly, she cannot assert claims on

behalf of Starke and/or Samson for any non-*habeas corpus*-associated relief *pro se*, such as

claims for relief under Sections 1983 and 1985, as well as any claims for relief under state law.

The Court therefore dismisses any claims for non-*habeas corpus*-associated relief that Plaintiff

asserts *pro se* on behalf of Stake and/or Samson, including any claims for relief under Sections

1983 and 1985, as well as any claims for relief under state law, without prejudice.[4]

## C.    *Younger* abstention doctrine

Plaintiff seems to seek injunctive relief and declaratory relief that would cause this Court

to intervene in and disrupt Plaintiff's pending state court criminal action(s), which may be

pending in the County Court, Orange County, and/or in the New York Supreme Court, Orange

County. The Court must dismiss such claims, however, under the abstention doctrine first

articulated by the Supreme Court of the United States in *Younger v. Harris*, 401 U.S. 37 (1971).

Under that doctrine, a federal court may not enjoin a pending state criminal proceeding in the

absence of special circumstances suggesting bad faith, harassment, or irreparable injury that is

both serious and immediate. *See Gibson v. Berryhill*, 411 U.S. 564, 573-74 (1973) (citing

---

[4] To the extent that Plaintiff seeks *habeas corpus* relief on behalf of Starke, seeking his release from custody, the Court must also dismiss such claims for relief without prejudice. When a *habeas corpus* petition:

> is brought by a person other than the one seeking relief, [that person, who is referred to as a "next friend,"] . . . must first demonstrate that he or she has standing to act on the [incarcerated] person's behalf. "First a 'next friend' must provide an adequate explanation—such as inaccessibility, mental incompetence, or other disability—why the real party in interest cannot appear on his [or her] own behalf to prosecute the action. Second, the 'next friend' must be truly dedicated to the best interests of the person on whose behalf he [or she] seeks to litigate, and it has been further suggested that a 'next friend' must have some significant relationship with the real party in interest."

*Banks as next friend to Guzman v. United States*, No. 1:19-CV-8302, 2019 WL 13545209, at *1 (S.D.N.Y. Sept. 24, 2019) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 163-64 (1990) (third alteration in original)). *But see Doe v. Hochul*, 139 F.4th 165, 178 (2d Cir. 2025) ("Although a significant relationship with the real party in interest is *relevant* to the appointment of a next friend, it is neither required nor dispositive." (emphasis in original)). "The burden is on the 'next friend' to establish the propriety of his [or her] status and thereby justify the jurisdiction of the court." *Whitmore*, 495 U.S. at 164. Because Plaintiff alleges nothing to suggest that Starke is incapable of seeking *habeas corpus* relief himself, and that Plaintiff is dedicated to Starke's best interests, the Court dismisses without prejudice any claims for *habeas corpus* relief that Plaintiff asserts on behalf of Starke as a next friend.

*Younger*, 401 U.S. 37). Application of this *Younger* abstention doctrine has been extended to the three following categories of state court proceedings: (1) state criminal prosecutions; (2) civil enforcement proceedings that are "akin to criminal prosecutions"; and (3) civil proceedings "that implicate a State's interest in enforcing the orders and judgments of its courts." *Sprint Commc'n, Inc. v. Jacobs*, 571 U.S. 69, 72-73 (2013). The *Younger* abstention doctrine applies to claims for injunctive relief, as well as to claims for declaratory relief, sought in a federal court, that would cause that court to intervene in any of those abovementioned types of state court proceedings. *See Kirschner v. Klemons*, 225 F.3d 227, 235 (2d Cir. 2000).

Plaintiff alleges nothing to suggest that bad faith, harassment, or irreparable injury that is both serious and immediate has occurred with respect her pending state court criminal action(s). Thus, applying the *Younger* abstention doctrine, the Court dismisses Plaintiff's claims for injunctive relief and declaratory relief that would cause this court to intervene in and disrupt Plaintiff's pending state court criminal action(s).

### D.    The *Rooker-Feldman* doctrine

Plaintiff also seems to ask this Court, under its federal question jurisdiction, to overturn what appears to be her state court conviction that occurred following her arrest on September 10, 2022, and her subsequent guilty plea on July 8, 2023; the Court must dismiss such claims. Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where the plaintiff seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment. *See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *see also Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 644 n.3 (2002) ("The *Rooker-Feldman* doctrine . . . recognizes that 28 U.S.C. § 1331[,] [the statute granting federal district courts' federal question jurisdiction,] is a grant of original jurisdiction, and does not authorize district courts to exercise appellate jurisdiction over state-

court judgments . . . ."); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("The *Rooker-Feldman* doctrine bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257)); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("The [*Rooker-Feldman*] doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court [of the United States] is the only federal court that has jurisdiction to review state court judgments, unless otherwise provided by Congress, *see, e.g.,* 28 U.S.C. § 2254 (habeas corpus review)." (citation omitted)). This doctrine "precludes a United States district court from exercising subject-matter jurisdiction." *Exxon Mobil Corp.*, 544 U.S. at 291. This includes when a plaintiff brings a federal non-*habeas corpus* civil action in which the plaintiff, in effect, challenges her state court criminal conviction that had been obtained upon her plea of guilty. *See Bramble v. Hayes*, No. 23-CV-5141, 2024 WL 4309231, at *3 (E.D.N.Y. Sept. 26, 2024), *appeal pending*, No. 25-82 (2d Cir.); *see Gokadze v. Hynes*, No. 11-CV-6099, 2012 WL 6737505, at *2 (E.D.N.Y. Dec. 28, 2012) ("The gravamen of [the plaintiff's] claim . . . is that the state court violated [the plaintiff's] constitutional rights in accepting a guilty plea that was proffered due to ineffective assistance of counsel. This is precisely the kind of claim the *Rooker–Feldman* doctrine bars."); *see also Molina v. James*, No. 21-CV-3144, 2022 WL 813815, at *4 (E.D.N.Y. Mar. 17, 2022) ("Plaintiff's request for an injunction directing certain defendants to dismiss plaintiff's conviction and declare him not guilty is barred by the *Rooker-Feldman* doctrine.").

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a final state court order or judgment; (3) the plaintiff invites district court review and

rejection of the final state court order or judgment; and (4) the final state court order or judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted).

Plaintiff seems to be asserting claims for injunctive and/or declaratory relief challenging her conviction in a state court that occurred following her arrest on September 10, 2022, and her subsequent guilty plea on July 8, 2023. The *Rooker-Feldman* doctrine bars this Court from considering such a challenge. The Court therefore dismisses Plaintiff's claims for injunctive and declaratory relief that challenge that conviction, for lack of subject matter jurisdiction.[5] *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

**E.    Claims under Section 1983 and Section 1985 against Judge Brown and Probation Officer Skyler Kemp**

The Court must dismiss, under the doctrine of judicial immunity, Plaintiff's claims under Sections 1983 and Section 1985, to the extent that Plaintiff seeks damages and injunctive relief against Judge Brown with respect to any actions taken in the course of presiding over Plaintiff's previous or pending state court criminal actions. The Court must additionally dismiss, for the

---

[5] To the extent that Plaintiff seeks *habeas corpus* relief with regard to her conviction brought about by her arrest on September 10, 2022, and subsequent guilty plea on July 8, 2023, the Court understands that such relief is sought under 28 U.S.C. § 2254. *See* 28 U.S.C. § 2254(a). Because Plaintiff does not disclose her sentence resulting from that conviction, it is unclear as to whether she is still "in custody" with respect to that conviction, and therefore, whether the Court has jurisdiction to consider such claims for Section 2254 *habeas corpus* relief. *See id.*; *Lackawanna Cnty. Dist. Attorney v. Coss*, 532 U.S. 394, 401 (2001). If Plaintiff is serving a term of probation as a result of that conviction, that would satisfy the "in custody" requirement for the purpose of Section 2254 *habeas corpus* jurisdiction. *See, e.g.*, *Mallo v. Vance*, 1:21-CV-10488, 2023 WL 2456709, at *3 (S.D.N.Y. Mar. 10, 2023). Yet, even if the Court were to have jurisdiction to consider Plaintiff's claims for *habeas corpus* relief under Section 2254, as a result of her currently serving a term of probation, she has alleged no facts showing that she has exhausted her available state court remedies to challenge that conviction and/or sentence. *See* § 2254(b)(1)(A). Thus, the Court also alternatively declines to consider any potential claims for such *habeas corpus* relief without prejudice, for lack of *habeas corpus* jurisdiction or due to failure to exhaust available state court remedies.

same reasons, such claims against Probation Officer Skyler Kemp with respect to his/her preparation and submission of a presentence report about Plaintiff to a state criminal court. Under this doctrine, judges are absolutely immune from suit for damages in their individual capacities for any actions taken within the scope of their judicial responsibilities. *See Mireles v. Waco*, 502 U.S. 9, 9-12 (1991) (context of claims brought under Section 1983); *Deem v. DeMella-Deem*, 941 F.3d 618, 620-21 (2d Cir. 2019) (affirming dismissal of claims under Sections 1983 and 1985 pursuant to the doctrine of judicial immunity); *Gross v. Rell*, 585 F.3d 72, 83-84 (2d Cir. 2009) (same with respect to claims, including those brought under Section 1985). Generally, "acts arising out of, or related to, individual cases before the judge are considered judicial in nature." *Bliven v. Hunt*, 579 F.3d 204, 210 (2d Cir. 2009). "[E]ven allegations of bad faith or malice cannot overcome judicial immunity." *Id.* at 209. This is because, "[w]ithout insulation from liability, judges would be subject to harassment and intimidation." *Young v. Selsky*, 41 F.3d 47, 51 (2d Cir. 1994). Judicial immunity does not apply when a judge takes action outside his or her judicial capacity, or when the judge takes action that, although judicial in nature, is taken in absence of all jurisdiction. *Mireles,* 502 U.S. at 11-12; *see also Bliven*, 579 F.3d at 209-10 (describing actions that are judicial in nature). But "the scope of [a] judge's jurisdiction must be construed broadly where the issue is the immunity of the judge." *Stump v. Sparkman*, 435 U.S. 349, 356 (1978).

Courts have extended this immunity from damages to "others who perform functions closely associated with the judicial process," *Cleavinger v. Saxner*, 474 U.S. 193, 200 (1985), when they are performing discretionary acts of a judicial nature that are essential to the judicial process, *see Rodriguez v. Weprin*, 116 F.3d 62, 66-67 (2d Cir. 1997); *Oliver v. Heller*, 839 F.2d 37, 39-40 (2d Cir. 1988); *see also Gyadu v. Bainer*, No. 3:19-CV-1120, 2021 WL 2073919, at *7

(D. Conn. May 24, 2021) (applying quasi-judicial immunity to claims against a court clerk under Section 1985). The United States Court of Appeals for the Second Circuit has specifically extended this type of immunity to probation officers in New York with respect to their preparation and submission of presentence reports to a state court. *See Hili v. Sciarrotta*, 140 F.3d 210, 213-15 (2d Cir. 1998).

In addition, Section 1983, as amended in 1996, provides that "in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable." 42 U.S.C. § 1983. Courts have also extended this amendment's immunity from injunctive relief to "judicial employees entitled to judicial and quasi-judicial immunity." *Triestman v. McGinty*, 804 F. App'x 98, 100 (2d Cir. 2020) (summary order); *see Irazu v. Sainz De Aja*, No. 23-702-cv, 2023 WL 8447256, at *2 (2d Cir. Dec. 6, 2023) (summary order); *Viverette v. Winograd*, No. 1:25-CV-7168, 2025 WL 2577665, at *5 (S.D.N.Y. Sept. 5, 2025); *Starke v. Fuentes*, 7:25-CV-3108, 2025 WL 2299258, at *4 (S.D.N.Y. Aug. 7, 2025); *Bey v. Ferdinand*, 1:24-CV-6684, 2025 WL 1505041, at *5 (S.D.N.Y. May 21, 2025); *Davis v. Thompson*, No. 23-CV-0705, 2024 WL 1018495, at *4 (E.D.N.Y. Mar. 8, 2024); *Caldwell v. Pesce*, 83 F. Supp. 3d 472, 484. (E.D.N.Y. 2015), *aff'd*, 639 F. App'x 38 (2d Cir. 2016) (summary order).

To the extent that Plaintiff asserts claims under Sections 1983 and 1985 for damages and declaratory relief against Judge Brown, arising from to any actions taken in the course of presiding over Plaintiff's previous or pending state court criminal actions, and also any such claims against Probation Officer Skyler Kemp, arising from his/her preparation and submission of a presentence report about Plaintiff to a state court, Plaintiff has failed to allege any facts

showing that either of these defendants acted beyond the scope of their judicial responsibilities or outside their jurisdiction. *See Mireles*, 509 U.S. at 11-12. Inasmuch as Plaintiff sues Judge Brown for "acts arising out of, or related to, individual cases before" him, *Bliven*, 579 F.3d at 210, and inasmuch as she sues Kemp for his/her discretionary acts of a judicial nature that are/were essential to the judicial process, the doctrine of judicial immunity applies to Plaintiff's claims under Sections 1983 and 1985 for damages and injunctive relief against these defendants. The Court therefore dismisses these claims under the doctrine of judicial immunity,[6] and consequently, because Plaintiff seeks monetary relief from defendants who are immune from such relief, *see* 28 U.S.C. § 1915(e)(2)(B)(iii), and as these claims are frivolous, *see* § 1915(e)(2)(B)(i); *Mills v. Fischer*, 645 F.3d 176, 177 (2d Cir. 2011) ("Any claim dismissed on the ground of absolute judicial immunity is 'frivolous' for purposes of [the IFP statute].").

## F.    Domestic relations abstention doctrine

The Court must further dismiss Plaintiff's federal law claims in which she seeks the restoration of her custody of her children. Federal district courts must abstain from exercising federal question jurisdiction over claims involving domestic relations issues, so long as those claims may be fully and fairly determined in the state courts. *See Am. Airlines, Inc. v. Block*, 905 F.2d 12, 14 (2d Cir. 1990). For example, a federal district court must abstain from exercising its federal question jurisdiction of claims in which it is "asked to grant a divorce or annulment,

---

[6] The amendment to Section 1983, allowing for injunctive relief against a judicial officer only if a state court declaratory decree was violated or state court declaratory relief is unavailable, precludes Plaintiff from seeking injunctive relief against these defendants. This is so because Plaintiff can seek review of these defendants' actions and/or rulings in the New York State appellate courts. *See Berlin v. Meijia*, No. 15-CV-5308, 2017 WL 4402457, at *4 (E.D.N.Y. Sept. 30, 2017) ("Here, no declaratory decree was violated and declaratory relief is available to plaintiffs through an appeal of the state court judges' decisions in state court."), *appeal dismissed*, No. 17-3589 (2d Cir. May 22, 2018).

determine support payments, or award custody of a child." *Id.* (internal quotation marks and citation omitted); *see also Deem*, 941 F.3d at 621 ("[T]he domestic relations *abstention* doctrine articulated in *American Airlines* [applies in federal question cases]. And . . . *American Airlines* remains good law in this Circuit." (emphasis in original)).

Petitioner has alleged no facts showing that she cannot fully and fairly litigate the issue of the custody of her children in the state courts. Thus, to the extent that Plaintiff asks this Court to issue a decision regarding the custody of her children, the Court dismisses any such claims for relief under federal law pursuant to the domestic relations abstention doctrine.

## G.    Procedural due process with respect to child custody

The Court interprets Plaintiff's amended complaint and supplements as asserting that OCCPS officials violated Plaintiff's constitutional rights by taking custody of her children without procedural due process of law. The Due Process Clause of the Fourteenth Amendment protects "against deprivations [of life, liberty, or property] without due process of law." *Rivera-Powell v. N.Y. City Bd. of Elections*, 470 F.3d 458, 464 (2d Cir. 2006) (internal quotation marks and citation omitted). "The fundamental requisite of due process of law is the opportunity to be heard . . . at a meaningful time and in a meaningful manner." *Goldberg v. Kelly*, 397 U.S. 254, 267 (1970) (internal quotation marks and citations omitted). Determining whether the process provided is adequate requires a weighing of: (1) the private interest affected; (2) the risk of erroneous deprivation and the probable value of further safeguards; and (3) the governmental interest at issue. *See Rivera-Powell*, 470 F.3d at 466 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)).

A government official's random and unauthorized act does not violate a person's right to procedural due process if a meaningful postdeprivation remedy is available. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1986); *Parratt v. Taylor*, 451 U.S. 527, 540-43 (1981), *overruled in*

*part on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986); *Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 880 (2d Cir. 1996). Thus, a claim under Section 1983 asserting that a government official has deprived a person of a liberty interest is not cognizable in a federal district court if state law provides an adequate remedy for the deprivation of that interest. *See Zinermon v. Burch*, 494 U.S. 113, 127-39 (1990); *Hudson*, 468 U.S. at 533. Accordingly, when a plaintiff asserts such a claim, "the federal court's initial inquiry must be whether the state has provided adequate remedies to redress such unlawful acts." *Vialez v. N.Y.C. Hous. Auth.*, 783 F. Supp. 109, 114 (S.D.N.Y. 1991). "[I]f a plaintiff had an opportunity to contest a defendant's actions but failed to do so, there can be no claim for violation of his or her procedural due process rights under 42 U.S.C. § 1983." *Id.* at 113.

The right of family integrity is a liberty interest protected by the procedural due process protections of the Fourteenth Amendment. *See Southerland v. City of New York*, 680 F.3d 127, 142 (2d Cir. 2012); *D.J.C.V. v. United States,* 605 F. Supp. 3d 571, 591-92 (S.D.N.Y. 2022); *Grullon v. Admin. For Children's Servs.*, No. 1:18-CV-3129, 2021 WL 981848, at *5 (S.D.N.Y. Mar. 16, 2021). "As a general rule . . . [unlike in instances of random and unauthorized deprivations of a liberty interest,] before parents may be deprived of the care, custody, or management of their children without their consent, due process—ordinarily a court proceeding resulting in an order permitting removal—must be accorded to them." *Tenenbaum v. Williams*, 193 F.3d 581, 593 (2d Cir. 1999) (emphasis added). "However, in emergency circumstances, a child may be taken into custody by a responsible State official without court authorization or parental consent." *Nicholson v. Scoppetta*, 344 F.3d 154, 171 (2d Cir. 2003) (internal quotation marks and citation omitted); *Southerland*, 680 F.3d at 142.

Plaintiff does not allege facts sufficient to state a claim, under Section 1983, that she was deprived of procedural due process with regard to what appears to be OCCPS officials' taking custody of her children. This is because she does not specify, in adequate detail, the circumstances that were the bases for the removal of her children from her custody; it seems only that they were removed during and, possibly, as a result of, her January 13, 2025 arrest and/or, possibly, as a result of New York Family Court proceedings. She does not specify: (1) whether her children were removed from her custody before or after a hearing took place; (2) if they were removed before a hearing took place, the purported reason, if any, for the removal; (3) if they were removed after a hearing, the circumstances and decision of the hearing, and whether she sought any further judicial review (e.g. an appeal) thereafter; and (4) why any procedural due process afforded her was inadequate. Because Plaintiff's allegations are insufficient, the Court dismisses these claims for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court grants Plaintiff leave to replead these claims in a second amended complaint in which she alleges facts sufficient to state such a claim of a procedural due process violation against an individual state or local government official.

## H.    Substantive due process claims arising from Plaintiff's losing custody of her children

The Court also understands Plaintiff's amended complaint and supplements as asserting claims of violations of Plaintiff's right to substantive due process, under Section 1983, arising from what appears to the loss of Plaintiff's custody of her children during and, possibly, as a result of, her January 13, 2025 arrest. The Court further understands that Plaintiff's children were taken by OCCPS officials and that, perhaps, New York Family Court proceedings have taken place regarding Plaintiff's continued custody of her children.

The substantive component of the Due Process Clause of the Fourteenth Amendment "provides heightened protection against government interference with certain fundamental rights and liberty interests." *Washington v. Glucksberg*, 521 U.S. 702, 720 (1997). Among these rights and liberty interests are:

> [t]he right of [a] family to remain together without the coercive interference of the awesome power of the state. This right to the preservation of family integrity encompasses the reciprocal rights of both parent and children. It is the interest of the parent in the companionship, care, custody and management of his or her children, and of the children in not being dislocated from the emotional attachments that derive from the intimacy of daily association.

*Duchesne v. Sugarman*, 566 F.2d 817, 825 (2d Cir. 1977) (internal quotation marks and citations omitted); *see Tenenbaum*, 193 F.3d at 600 (noting that families have "a substantive right under the Due Process Clause to remain together without the coercive interference of the awesome power of the state" (internal quotation marks and citation omitted)). Thus, parents have a "constitutionally protected liberty interest in the care, custody and management of their children," and can bring a substantive due process claim to challenge a child's removal. *Southerland*, 680 F.3d at 142 (internal quotation marks and citation omitted). This right to family integrity "'does not[,] [however,] automatically override the sometimes competing' government interest in protecting children, . . . particularly from harm caused by the parents themselves." *E.D. ex rel. V.D. v. Tuffarelli*, 692 F. Supp. 2d 347, 367 (S.D.N.Y. 2010) (quoting *Kia P. v. McIntyre*, 235 F.3d 749, 758 (2d Cir. 2000)), *aff'd sub nom.*, *E.D. & A.D. ex rel. Demtchenko v. Tuffarelli*, 408 F. App'x 448 (2d Cir. 2011) (summary order).

To state a claim for a violation of this substantive due process right, "a plaintiff must demonstrate that the state action depriving [her] of custody was so shocking, arbitrary, and egregious that the Due Process Clause would not countenance it even were it accompanied by full procedural protection." *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 275 (2d Cir.

2011) (internal quotation marks and citation omitted). "It is not enough that the government act be incorrect or ill-advised; it must be conscience-shocking." *Id.* (internal quotation marks and citation omitted). Thus, "[o]nly the most egregious official conduct can be said to be arbitrary in th[is] constitutional sense and therefore unconstitutional." *Id.* (internal quotation marks and citation omitted). In addition, "a claim under the Due Process Clause for infringement of the right to familial associations requires the allegation that state action was specifically intended to interfere with the family relationship." *Gorman v. Rensselaer Cnty.*, 910 F.3d 40, 48 (2d Cir. 2018). "Common negligence is categorically insufficient to shock the conscience, so [a] parent[] must raise an inference that [the defendants] acted maliciously before [an allegation] can even begin to support a violation of substantive due process." *Cox*, 654 F.3d at 276. The "mere failure to meet local or professional standards, without more, should not generally be elevated to the status of [such a] constitutional violation." *Wilkinson ex rel. Wilkinson v. Russell*, 182 F.3d 89, 106 (2d Cir. 1999) (citation omitted). Thus, courts have imposed liability only for "'obvious extremes,'" such as manufacturing evidence or ignoring exculpatory information. *Tuffarelli*, 692 F. Supp. 2d at 360 (quoting *Wilkinson*, 182 F.3d at 104).

Plaintiff's allegations in her amended complaint and supplements are insufficient to show that any OCCPS official violated her substantive due process right of family integrity when taking custody of her children. This is because she does not allege any facts that show the OCCPS officials' taking of custody of her children was conscience-shocking, and that such seizure of custody was done with the intent to interfere with her familial relationship with her children. She seems to allege that her children were taken into custody during and, possibly, as a result of, her arrest and/or New York Family Court proceedings, which is insufficient; if her children were taken from her custody because of a judicial determination, this Court is unable to

determine that such a determination is unreasonable or conscience-shocking. The Court therefore dismisses these claims for failure to state a claim on which relief may be granted, *see* § 1915(e)(2)(B)(ii), but grants Plaintiff leave to replead these claims in a second amended complaint in which she alleges facts sufficient to state such a claim against individual OCCPS officials or other state or local government officials.

**I.    Claims under Sections 1983 and 1985 against the County of Rockland, the Town of Warwick Police Department, and the Orange County Department of Probation**

The Court understands that Plaintiff is asserting claims under Sections 1983 and 1985 against municipal defendants, including the County of Rockland, the Town of Warwick Police Department ("WPD"), and the Orange County Department of Probation ("OC Probation"). Unless otherwise authorized by a municipal charter, municipal agencies, such as the WPD and OC Probation are not suable entities; they do not have the capacity to be sued, as opposed to the respective municipalities themselves. *See Edwards v. Arocho*, 125 F.4th 336, 354 (2d Cir. 2024) ("A plaintiff cannot bring a claim against a municipal agency that does not have the capacity to be sued under *its municipal charter.*" (emphasis in original)); *Pearson v. O.C.J. of Goshen, N.Y.*, No. 7:24-CV-8254, 2025 WL 370965, at *3 (S.D.N.Y. Feb. 3, 2025) (Orange County Sheriff's Office is not a suable entity); *Simpson v. Town of Warwick Police Dep't*, 159 F. Supp. 3d 419, 433 (S.D.N.Y. 2016) (Town of Warwick Police Department is not a suable entity), *appeal dismissed*, No. 16-794 (2d Cir. 2016); *see also Davis v. Cnty. of Erie*, No. 22-CV-0554, 2022 WL 18215866, at *3-4 (W.D.N.Y. Dec. 1, 2022) ("Defendant Erie County Department of Probation is merely an administrative arm of Defendant County such that the Probation Department does not have a separate legal identity and, therefore, is not a suable entity. . . ."), *report & recommendation adopted*, 2023 WL 145581 (W.D.N.Y. Jan. 10, 2023); *see also Emerson v. City of New York*, 740 F. Supp. 2d 385, 395 (S.D.N.Y. 2010) ("[A] plaintiff is generally prohibited

from suing a municipal agency."). The Court therefore dismisses Plaintiff's claims against the WPD and OC Probation for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii).

The Court, however, understands Plaintiff's amended complaint and supplements as asserting claims under Sections 1983 and 1985 against the Counties of Rockland and Orange, as well as the Town of Warwick. When a plaintiff sues a municipality, like the Counties of Rockland and Orange and the Town of Warwick, under Section 1983, it is not enough for the plaintiff to allege that one of the municipality's employees or agents engaged in some wrongdoing. The plaintiff must show that the municipality itself caused the violation of the plaintiff's rights. *See Connick v. Thompson*, 563 U.S. 51, 60 (2011) ("A municipality or other local government may be liable under this section [1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." (quoting *Monell v. Dep't of Soc. Servs*., 436 U.S. 658, 692 (1978))); *Cash v. Cnty. of Erie*, 654 F.3d 324, 333 (2d Cir. 2011). In other words, to state a claim under Section 1983 against a municipality, the plaintiff must allege facts showing: (1) the existence of a municipal policy, custom, or practice, and; (2) that the policy, custom, or practice caused the violation of the plaintiff's constitutional rights. *Jones v. Town of East Haven*, 691 F.3d 72, 80 (2d Cir. 2012); *see Bd. of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 403 (1997) (internal citations omitted). The same standard would seem to apply with respect to claims under Section 1985 against a municipality. *See Owens v. Haas*, 601 F.2d 1242, 1247 (2d Cir. 1979).

A plaintiff may satisfy the policy, custom, or practice requirement by alleging facts supporting the existence of one of the following:

(1) a formal policy officially endorsed by the municipality; (2) actions taken by government officials responsible for establishing the municipal policies that

caused the particular deprivation in question; (3) a practice so consistent and
widespread that, although not expressly authorized, constitutes a custom or usage
of which a supervising policy-maker must have been aware; or (4) a failure by
policymakers to provide adequate training or supervision to subordinates to such
an extent that it amounts to deliberate indifference to the rights of the those who
come into contact with the municipal employees.

*Brandon v. City of New York*, 705 F. Supp. 2d 261, 276-77 (S.D.N.Y. 2010) (citations omitted).

Plaintiff alleges no facts showing that a policy, custom, or practice of the County of
Rockland, the County of Orange, or the Town of Warwick caused a violation of her federal
constitutional rights. Thus, the Court dismisses Plaintiff's claims under Sections 1983 and 1985
against these municipal defendants for failure to state a claim on which relief may be granted.
*See* § 1915(e)(2)(B)(ii). In light of Plaintiff's *pro se* status, however, the Court grants Plaintiff
leave to replead these claims in a second amended complaint in which she names the County of
Rockland, the County of Orange, and/or the Town of Warwick (and not any municipal agency,
such as a police department or a probation department) as a defendant, and in which she alleges
facts sufficient to state a claim under Section 1983 and/or Section 1985 against at least one of
these municipal defendants.

## J.   Personal involvement of the individual defendants with respect to claims under Section 1983

The Court must dismiss Plaintiff's claims under Section 1983 against the individual
defendants, including, but not limited to Mazella, Kemp, Johnson, Pierce, Kass, and Ospra. To
state a claim under Section 1983, a plaintiff must allege facts showing the defendants' direct and
personal involvement in the alleged constitutional deprivation. *See Spavone v. N.Y. State Dep't of
Corr. Serv.*, 719 F.3d 127, 135 (2d Cir. 2013) ("It is well settled in this Circuit that personal
involvement of defendants in the alleged constitutional deprivations is a prerequisite to an award
of damages under § 1983." (internal quotation marks omitted)). A defendant may not be held
liable under Section 1983 solely because that defendant employs or supervises a person who

violated the plaintiff's rights. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."). Rather, "[t]o hold a state official liable under § 1983, a plaintiff must plead and prove the elements of the underlying constitutional violation directly against the official." *Tangreti v. Bachmann*, 983 F.3d 609, 620 (2d Cir. 2020).

Plaintiff alleges nothing to suggest that any of the individual defendants, including, but not limited to, Mazella, Kemp, Johnson, Pierce, Kass, and Ospra, was directly and personally involved in any of the alleged violations of her federal constitutional rights; she does not specify who entered her home without a warrant, who unlawfully arrested her and brought criminal charges against her, who had her involuntarily hospitalized and medicated, who assaulted her, or who took away from her custody of her children.

The Court therefore dismisses Plaintiff's claims under Section 1983 against the individual defendants for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court, however, grants Plaintiff leave to replead her claims under Section 1983 against these and/or other individuals named as defendants in a second amended complaint in which she alleges facts showing how such individual defendants were each personally and directly involved in the alleged violations of her constitutional rights. The Court does not, however, grant Plaintiff leave to replead any claims against Judge Brown and Kemp for which the Court has already found them immune from suit, as specified above.

## K.    Claims of conspiracy under Sections 1983 and 1985

The Court understands Plaintiff's amended complaint and supplements as asserting claims of conspiracy under Sections 1983 and 1985. To state a claim of conspiracy under Section 1983, a plaintiff must show "(1) an agreement between two or more state actors or between a state actor and a private entity; (2) to act in concert to inflict an unconstitutional injury; and

(3) an overt act done in furtherance of that goal causing damages." *Pangburn v. Culbertson*, 200 F.3d 65, 72 (2d Cir. 1999). To state a claim of conspiracy under Section 1985(3), a plaintiff must allege facts suggesting the existence of: (1) a conspiracy; (2) for the purpose of depriving the plaintiff of the equal protection of the laws, or the equal privileges or immunities under the laws; (3) an overt act in furtherance of the conspiracy; and (4) an injury to the plaintiff's person or property, or a deprivation of her right or privilege as a citizen of the United States. *Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999). "[T]he [Section 1985(3)] conspiracy must also be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' action." *Id.* (internal quotation marks and citation omitted).

Vague and unsupported assertions of a claim of conspiracy, either under Section 1983 or Section 1985, will not suffice to state a claim upon which relief can be granted. *See, e.g.*, *Stoner v. Young Concert Artists, Inc.*, 626 F. App'x 293, 296 (2d Cir. 2015) (summary order); *Wang v. Miller*, 356 F. App'x 516, 517 (2d Cir. 2009) (summary order); *Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003); *Boddie v. Schnieder*, 105 F.3d 857, 862 (2d Cir. 1997); *Polur v. Raffe*, 912 F.2d 52, 56 (2d Cir. 1990).

Plaintiff's allegations regarding a conspiracy are conclusory, vague, and without detail. The Court therefore dismisses Plaintiff's claims of conspiracy under Section 1983 and Section 1985 for failure to state a claim on which relief may be granted. *See* § 1915(e)(2)(B)(ii). The Court grants Plaintiff leave to replead these claims in a second amended complaint in which she alleges facts with sufficient detail to state such a claim.

## LEAVE TO AMEND

Plaintiff proceeds in this matter without the benefit of an attorney. Federal district courts generally should grant a self-represented plaintiff an opportunity to amend a complaint to cure its defects, unless amendment would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir.

2011). Indeed, the United States Court of Appeals for the Second Circuit has cautioned that district courts "should not dismiss [a *pro se* complaint] without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (quoting *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999)). Because Plaintiff may be able to allege additional facts to state a valid claim under Section 1983 and/or Section 1985 with respect to those claims in which the Court has granted her leave to replead, the Court grants Plaintiff 60 days' leave to replead those claims—and only those claims; none in which the Court has not granted her leave to replead—in a second amended complaint, as specified above.

Plaintiff, in her second amended complaint, must provide more facts about those claims for which the Court has granted her leave to replead, as specified above. She must name as the defendant(s) in the caption[7] and name, in the statement of claim of her second amended complaint, those defendants who were allegedly involved in the deprivation of her federally protected rights. If Plaintiff does not know the name of an individual defendant, she may refer to that individual as "John Doe" or "Jane Doe," with other identifying information (such as a shield number), in both the caption and the body of the second amended complaint.[8] The naming of "John Doe" or "Jane Doe" defendants, however, does *not* toll the limitations periods governing

---

[7] The caption is located on the front page of the second amended complaint. Each defendant must be named in the second amended complaint's caption. Plaintiff may attach additional pages to her second amended complaint if there is not enough space to list all of the defendants in the caption. If Plaintiff needs to attach an additional page to list all defendants, she should write "see attached list" on the first page of her second amended complaint. Any defendants named in the caption must also be discussed in the second amended complaint's statement of claim.

[8] For example, an individual defendant may be identified as: "Police Officer John Doe #1 (Shield #12345) on duty on August 31, 2026, at the New York Police Department's First Precinct, during the 7 a.m. to 3 p.m. shift."

this action, and Plaintiff shall be responsible for ascertaining the true identity of any "John Doe" or "Jane Doe" defendants and amending her complaint again to include the identity of any "John Doe" or "Jane Doe" defendants before the applicable limitations period expires. Should Plaintiff seek to add a new claim or party after the applicable limitations period has expired, she must meet the requirements of Rule 15(c) of the Federal Rules of Civil Procedure.

In the "Statement of Claim" section of the second amended complaint, Plaintiff must provide a short and plain statement of the relevant facts supporting each claim against each defendant. If Plaintiff has an address for any named defendant, she must provide it. Plaintiff should include, in the second amended complaint, all of the information that she wants the Court to consider in deciding whether the second amended complaint states a claim for relief. That information should include:

a) the names and titles of all relevant people;

b) a description of all relevant events, including what each defendant did or failed to do, the approximate date and time of each event, and the general location where each event occurred;

c) a description of the injuries Plaintiff suffered; and

d) the relief Plaintiff seeks, such as money damages, injunctive relief, or declaratory relief.

Essentially, Plaintiff's second amended complaint should tell the Court: who violated her federally protected rights; how, when, and where such violations occurred; and why Plaintiff is entitled to relief.

Because Plaintiff's second amended complaint will completely replace, not supplement, the original complaint, the amended complaint, and any supplements to the amended complaint, any facts or claims that Plaintiff wants to include from any of those documents must be repeated in her second amended complaint.

**L.**     **Referral to SDNY Federal Pro Se Legal Assistance Project**

The City Bar Justice Center ("CBJC") operates the SDNY Federal Pro Se Legal

Assistance Project to assist self-represented parties with civil actions in this court. Appointments

can be scheduled by phone (212-382-4794), email (fedprosdny@nycbar.org), or by completing

the intake form. A flyer with details is attached.[9]

## CONCLUSION

The Court grants Plaintiff leave to file a second amended complaint, as specified above,

within 60 days of the date of this order. Plaintiff must submit her second amended complaint to

this Court's Pro Se Intake Unit within 60 days of the date of this order, caption the document as a

"Second Amended Complaint," and label the document with docket number 1:25-CV-1950

(LLS). A Second Amended Complaint form is attached to this order. No summonses will issue at

this time. If Plaintiff fails to comply within the time allowed, and she cannot show good cause to

excuse such failure, the Court will direct the Clerk of Court to enter a judgment dismissing this

action for the reasons discussed in this order. It is understood that, should such a judgment be

entered, the Court will have declined to consider, under the court's supplemental jurisdiction,

Plaintiff's claims under state law. *See* 28 U.S.C. § 1367(c)(3). For the reasons discussed above,

all of the Plaintiff motions or other requests for relief are denied (ECF 7 & 16), apart from those

---

[9] The CBJC is a private organization that it not part of the court, and the CBJC's SDNY Federal Pro Se Legal Assistance Project cannot accept filings on behalf of the court.

included in her amended complaint itself, and the Clerk of Court is directed to terminate all

pending motions.

       SO ORDERED.

Dated:    September 18, 2025
           New York, New York

                                    Louis L. Stanton
                                    Louis L. Stanton
                                    U.S.D.J.